UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

IN RE:                         )
                               )
Kenneth David Linn             )    Case No. 04-13574C-7G
                               )
        Debtor.                )
                               )

MEMORANDUM OPINION

This case came before the court on April 5, 2005, for hearing on whether this Chapter 7 case should be dismissed pursuant to § 707(b) of the Bankruptcy Code.  The Debtor appeared at the hearing with his attorney, J. Brooks Reitzel, Jr.  Appearing on behalf of the Bankruptcy Administrator was Robyn C. Whitman. Having considered the evidence offered by the parties and the matters of record in this case, the court has concluded that this case should be dismissed pursuant to § 707(b) of the Bankruptcy Code based upon the following findings of fact and legal conclusions.

FACTS

This voluntary Chapter 7 case was filed by the Debtor on November 23, 2004.  The Debtor is 33 years of age, divorced and has one minor child.  The Debtor pays child support of $575.00 per month, but pays no alimony or support for his former wife who remarried in 2000.  At the time of the filing, the Debtor listed in his Schedule I a gross monthly salary of $6,284.35 and a net monthly salary of $4,153.12.  In his Schedule J, the Debtor listed expenses totaling $4,156.90, including his child support payment.

Shortly before the hearing, the Debtor filed an amended Schedule I showing a gross monthly income of $5,416.67 and a net monthly income of $3,685.70.  At the same time, the Debtor filed an amended Schedule J showing monthly expenses of $4,049.07.  In 2004, the Debtor earned $73,498.00, in 2003 he earned $70,000.00 and in 2002 he earned $63,684.00.

The schedules filed by the Debtor listed no secured debt. However, in his Schedule F, the Debtor listed unsecured indebtedness totaling $63,635.50 consisting entirely of credit card indebtedness except for a student loan indebtedness of $8,532.26. The personal property listed by the Debtor in Schedule B consists of cash and bank accounts ($400.00), wearing apparel ($350.00), household furnishings and miscellaneous items ($3,175.00) and his 1996 Jeep Cherokee ($4,100.00).  In his claim for property exemptions the Debtor claimed essentially all of his property as exempt property.

## LEGAL CONCLUSIONS AND DISCUSSION

Under § 707(b), the court may dismiss a case filed by an individual debtor under Chapter 7 whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of Chapter 7.  This provision represents an attempt to strike a balance between allowing debtors a fresh start and stemming abuse of consumer credit by providing the bankruptcy court with a means of dealing equitably with the

situation in which a debtor seeks to take unfair advantage of his or her creditors through the use of Chapter 7.  See Green v. Staples (In re Green), 934 F.2d 568, 570 (4th Cir. 1991).

The first requirement in order for § 707(b) to be applicable is that the debts of the debtor be primarily consumer debts.  Under § 101(8) of the Bankruptcy Code a consumer debt is a "debt incurred by an individual primarily for a personal, family, or household purpose."  A debt "not incurred with a profit motive or in connection with a business transaction" is considered consumer debt for purposes of § 707(b).  Kestell v. Kestell (In re Kestell), 99 F.3d 146, 149 (4th Cir. 1996).  In the present case, it is admitted that the debts consist of consumer debts incurred by an individual, thus satisfying the first requirement under § 707(b).

The remaining issue is whether granting the Debtor in this case a Chapter 7 discharge pursuant to § 727 would involve a "substantial abuse" of the provisions of Chapter 7. Unfortunately, there is no statutory definition of "substantial abuse" to aid in this determination.  Various tests or rules for determining "substantial abuse" have been developed by the courts.  However, the rule cited most frequently in the Fourth Circuit is the one adopted in Green v. Staples (In re Green), 934 F.2d 568 (4th Cir. 1991).  In Green the court declined to adopt a per se rule under which a debtor's ability to pay his debts, standing alone, justifies a § 707(b) dismissal.  Instead, while specifically

recognizing that the debtor's ability to pay is the <u>primary</u> factor to be considered, the court ruled that "the substantial abuse determination must be made on a case-by-case basis, in light of the totality of the circumstances."  <u>Id.</u> at 573.  The court then provided the following examples of the circumstances or factors to be considered: (1) whether the bankruptcy petition was filed because of sudden illness, calamity, disability or unemployment; (2) whether the debtor incurred consumer credit in excess of his ability to pay; (3) whether the debtor's family budget is excessive or unreasonable; (4) whether the schedules and statement of financial affairs reasonably and accurately reflect the debtor's true financial condition; (5) the ability of the debtor to pay his or her creditors; and (6) whether the petition was filed in good faith.  <u>See</u> <u>id</u>.  In making this evaluation, the court must give effect to the presumption in favor of granting Chapter 7 relief that Congress included in § 707(b).  <u>See</u> <u>id</u>.

Turning to the circumstances in the present case, there are a number of factors or circumstances which weigh against the Debtor.  In the first place, this is not a case that was filed because of sudden illness, calamity, disability or unemployment.  The Debtor is a college graduate with an undergraduate degree in accounting and a master's degree in business.  He has been steadily employed and well compensated since he left college.  He was an officer in the Navy from 1993 through 1999.  Since receiving his discharge

- 4 -

from the Navy in 1999, he has had a series of jobs which have produced an annual income that has increased from $48,548.00 in 2000 to $73,498.00 in 2004.  The Debtor did not experience illness, disability, loss of employment or calamity prior to the filing of this case on November 23, 2004.  While the Debtor was divorced in 1999, he has paid no alimony or spousal support since 2000.  His only dependent is a six-year-old daughter who resides with her mother to whom the Debtor pays child support of $575.00 per month.  Other than this payment, the Debtor has only himself to support.  It thus appears that the Debtor has had steady income which was more than sufficient to sustain a comfortable standard of living without going into debt.  Nothing in the evidence suggests any type of financial stress or crisis that would explain either the filing of this case or the magnitude of the debt that apparently prompted the filing.

When this case was filed the Debtor clearly had a level of consumer debt that was beyond his ability to pay, which is another factor that weighs against the Debtor.  The Debtor was unable to credibly account for his indebtedness.  Despite having received the high level of income and cash flow reflected in the foregoing figures and despite the fact that Debtor had no unemployment, no illness and no calamity and only child support for a single child, the Debtor owed unsecured indebtedness of $63,635.00 when this case was filed in November of 2004.  The Debtor was unable to provide a

plausible explanation of how this level of indebtedness was incurred by him or what he did with the money that was borrowed or charged on his credit cards.  Debtor's contention that a large amount of the indebtedness was related to the 1999 divorce was not credible and is not accepted by the court.  The unexplained level of indebtedness that prompted the filing of this case reflects either reckless spending on the part of the Debtor or living beyond his means, resulting in indebtedness in excess of his ability to pay.

In this Chapter 7 case, the Debtor proposes to retain all of his assets and make no payments whatsoever to his creditors.  In that connection, the Debtor has filed a claim for property exemptions in which he has claimed all of his property as exempt and the Chapter 7 trustee has filed a report of no distribution.  Thus, if the Debtor is allowed to proceed in this Chapter 7 case, he will be able to retain all of his assets without his creditors receiving one cent.  Considering the quantity of the debt that was accumulated by the Debtor, the circumstances under which such debt was incurred and the fact that the Debtor has the ability to pay a substantial amount to his creditors, the court is satisfied that such a result would constitute a substantial abuse of the provisions of Chapter 7.

Making an analysis of a debtor's ability to pay for purposes of § 707(b) involves examining the debtor's future income and

future expenses.  See Green, 934 F.2d at 572 (exploring "the relation of the debtor's future income to his future necessary expenses" is part of the § 707(b) analysis); In re Krohn, 886 F.2d 123, 126 (6th Cir. 1989); Waites v. Braley, 110 B.R. 211, 214-15 (Bankr. E.D. Va. 1990).  Generally, the ability to pay is measured by assessing how much disposable income a debtor would be able to pay his or her unsecured creditors under a hypothetical Chapter 13 plan.  In re DeRosear, 265 B.R. 196, 203-04 (Bankr. S.D. Iowa 2001).  The debtor's disposable income usually is determined in accordance with the definition of disposable income contained in § 1325(b)(2) of the Bankruptcy Code using income and expense figures that are reasonable and accurate.  Id. at 204.  Many courts base the ability to pay determination upon the percentage of unsecured debt that could be repaid by the debtor in a Chapter 13 case.  The percentages regarded as reflecting an ability to pay have varied from case to case.  See In re Norris, 225 B.R. 329, 332 (Bankr. E.D. Va. 1998).  However, in a § 707(b) case, a court is not limited to looking solely at the percentage of debt that could be paid under a Chapter 13 plan.  "Otherwise debtors would be rewarded for having more debt rather than less."  In re Falke, 284 B.R. 133, 140 (Bankr. D. Or. 2002).  Thus, instead of relying upon the percentage of debt that can be paid, the court instead may look at the aggregate amount that a debtor can pay and, if that amount is substantial, may find that the debtor has the ability to pay for

purposes of § 707(b).  Id.  "It is the ability to make a substantial effort to pay, rather than the ability to pay a particular percentage of claims, that precludes the debtor from relief under Ch. 7." Id.  As the court noted in the DeRosear case, "the essential inquiry remains whether the debtor's ability to repay creditors with future income is sufficient to make the Chapter 7 liquidating bankruptcy a substantial abuse." DeRosear, 265 B.R. at 204.

In making the assessment of whether a debtor has the ability to pay for purposes of § 707(b), it is appropriate for the court to consider whether the debtor has included expenses in the budget that are not necessary expenses and also whether the expenses claimed by a debtor can be reduced significantly without depriving the debtor and his dependents of adequate food, clothing, shelter and other necessities of life.  See In re Engskow, 247 B.R. 314, 317 (Bankr. M.D. Fla. 2000) (budget was "extravagant and unreasonable" based upon the amount included for mortgage payments and utilities); Walton v. Smith (In re Smith), 229 B.R. 895, 899 (Bankr. S.D. Ga. 1997) (mortgage payment of $1,695.00 was not reasonable); In re Carlton, 211 B.R. 468, 473 (Bankr. W.D.N.Y. 1997) (residence rental of $3,000.00 per month for a family of four was unreasonable and excessive).  Thus, in assessing the Debtor's ability to pay in the present case, the court is not bound to accept the amounts of the expenses claimed by the Debtor but,

instead, may make adjustments that are appropriate in determining the reasonable and necessary expenses of the Debtor.  Similarly, the income figures listed in Debtor's Schedule I may be adjusted to comport with the evidence relating to income.

The evidence in this case, including tax returns, reflects a history of stable income for the Debtor which likely would continue during the life of a Chapter 13 plan.  The evidence reflects that the Debtor's income has increased from year to year since 2000, and is likely to continue to do so.  When this case was filed, the Debtor was earning $73,498.00 per year or $6,284.00 per month.  After this case was filed, the Debtor changed jobs and began working in the management training program of Home Depot Corporation.  The Debtor's starting salary at Home Depot was $65,000.00 per year which produces a gross monthly salary of $5,416.67 and a net monthly salary of $3,685.70.  In addition, the Debtor may receive a bonus and his income will likely increase as he proceeds through the management program into a management position with the company.  However, in assessing the Debtor's ability to pay for purposes of § 707(b) the court will utilize Debtor's base monthly income of $3,685.00.

Debtor's evidence regarding his budget and expenses was conflicting.  In his original Schedule J the Debtor listed expenses totaling $4,156.90.  Apparently recognizing that the Schedule J was not accurate, the Debtor then submitted a modified list of expenses

in an amended Schedule J which listed expenses totaling $4,049.07. However, it is clear from a review of the items included in Debtor's amended list of monthly expenditures that a number of the listed expenditures should be reduced or eliminated based upon the reasonable needs of the Debtor.  The expenditures that are excessive and should be reduced or eliminated include telephone expense, which should be reduced from $180.00 to $80.00; cable and internet, which should be reduced from $110.00 to zero; home maintenance, which should be reduced from $50.00 to zero since the Debtor lives in an apartment; food, which should be reduced from $425.00 to $325.00; clothing, which should be reduced from $250.00 to $150.00; medical and dental, which should be reduced from $200.00 to $100.00; transportation, which should be reduced from $485.00 to $300.00; recreation, which should be reduced from $250.00 to $100.00; and alleged charitable contributions, which should be reduced from $400.00 to zero.  Regarding this latter figure, the court recognizes that § 707(b) provides that the court may not take into consideration whether a debtor has made, or continues to make, charitable contributions to a qualified religious or charitable entity in deciding whether a case should be dismissed.  However, this does not mean that the court must accept the amount of charitable contributions that a debtor lists in Schedule J where the evidence does not reflect that the debtor, in fact, has given or is giving the listed amount to charity.  See In

re Smihula, 234 B.R. 240 (Bankr. D.R.I. 1999). The evidence in the present case regarding charitable contributions lacked any supporting documentation and was insufficient to establish either a history of charitable giving or current giving. The result of these adjustments is that Debtor's monthly expenditures could be reduced from the $4,049.00 figure shown in Debtor's amended Schedule J to $2,805.00 per month. Accordingly, the court concludes that in assessing Debtor's ability to pay his creditors, the figure of $2,805.00 is an appropriate figure to use for Debtor's expenses.

Based upon the monthly income figure in this case of $3,685.00 and reduced monthly expense figure of $2,805.00, the Debtor has disposable income of at least $880.00 per month which could be available to fund payments to his creditors. In a Chapter 13 case, if the Debtor submitted only a 36 month plan, a total of $31,680.00 would become available for distribution under a Chapter 13 plan involving a $880.00 monthly payment to the Chapter 13 Trustee. After taking into account a 6% trustee fee and attorney fee costs related to such a Chapter 13 case, it appears that the Debtor could pay a dividend of 45% if he were willing to proceed under Chapter 13 with a three-year plan, rather than seeking a Chapter 7 discharge. With a longer plan, the Debtor, of course, could pay a higher dividend to his creditors or, if appropriate, reduce the amount of the monthly plan payment. Of course, what constitutes a

re Smihula, 234 B.R. 240 (Bankr. D.R.I. 1999). The evidence in the present case regarding charitable contributions lacked any supporting documentation and was insufficient to establish either a history of charitable giving or current giving. The result of these adjustments is that Debtor's monthly expenditures could be reduced from the $4,049.00 figure shown in Debtor's amended Schedule J to $2,805.00 per month. Accordingly, the court concludes that in assessing Debtor's ability to pay his creditors, the figure of $2,805.00 is an appropriate figure to use for Debtor's expenses.

Based upon the monthly income figure in this case of $3,685.00 and reduced monthly expense figure of $2,805.00, the Debtor has disposable income of at least $880.00 per month which could be available to fund payments to his creditors. In a Chapter 13 case, if the Debtor submitted only a 36 month plan, a total of $31,680.00 would become available for distribution under a Chapter 13 plan involving a $880.00 monthly payment to the Chapter 13 Trustee. After taking into account a 6% trustee fee and attorney fee costs related to such a Chapter 13 case, it appears that the Debtor could pay a dividend of 45% if he were willing to proceed under Chapter 13 with a three-year plan, rather than seeking a Chapter 7 discharge. With a longer plan, the Debtor, of course, could pay a higher dividend to his creditors or, if appropriate, reduce the amount of the monthly plan payment. Of course, what constitutes a

reasonable budget for a debtor is not something that can be projected with absolute precision and certainty and the dividend which the Debtor in this case would be able to pay under Chapter 13 may not be 45%, depending upon the exact amount by which Debtor's expenses are reduced.  If such is the case, it is because of the size of the excessive and unnecessary indebtedness incurred by the Debtor.  Such a circumstance should not work in favor of a debtor faced with a § 707(b) challenge.  Given the debt picture and other circumstances of this case, the court is satisfied that the Debtor has the ability to pay his creditors an amount which is sufficient to render this case abusive for purposes of § 707(b).

The remaining factors are whether the schedules and statement of financial affairs fairly and accurately reflect Debtor's financial condition and whether the petition was filed in good faith.  It appears that with the exception of Debtor's Schedule J, the schedules and statement of financial affairs do disclose Debtor's financial condition with reasonable accuracy, and the evidence did not reflect bad faith on the part of the Debtor, which weighs in favor of the Debtor.  However, the other circumstances of this case are such that the granting of a Chapter 7 discharge would involve a substantial abuse of the provisions of Chapter 7.

## CONCLUSION

Having considered the totality of the circumstances presented by this case, the court concludes that the granting of Chapter 7

relief in this case would be a substantial abuse of the provisions of Chapter 7 and that this case should be dismissed under § 707(b) of the Bankruptcy Code.  An order so providing will be entered contemporaneously with the filing of this memorandum opinion.

PARTIES TO BE SERVED

J. Brooks Reitzel, Jr.
P.O. Box 554
High Point, NC 27262

Kenneth David Linn
5856 Old Oak Ridge Road, #606
Greensboro, NC 27420

Michael D. West, Bankruptcy Administrator